UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD ALLEN HAMMONDS, JR., : CIVIL NO: 4:13-CV-01470
:
    Plaintiff :
: (Judge Brann)
v. :
: (Magistrate Judge Schwab)
THE RELIGIOUS ACCOMODATION :
COMMITTEE, *et al.*, :
:
    Defendants :

# REPORT AND RECOMMENDATION

## I. Introduction.

The defendants in this case are denying the plaintiff, Richard Allen Hammonds, Jr., a kosher diet because they purportedly do not believe that he has a sincere religious belief in such a diet. Because Hammonds admittedly did not exhaust available administrative remedies prior to filing this action as required by law, we recommend that the complaint be dismissed and that Hammonds's motion for a temporary restraining order or preliminary injunction be denied.

## II. Factual Background and Procedural History.

Hammonds, a state prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 case by filing a complaint naming as a defendants the Religious Accomodation Committee of the Pennsylvania Department of Corrections and the following officers

and officials of the State Correctional Institution at Fayette: Chaplain Frank Lewis, Unit Manager Stephen Buzas, and Superintendent Brian Coleman.

Hammonds alleges that, in February of 2013, he had a religious vision. It was in a dream, according to Hammonds, that God told him that he was defiling himself by not adhering to the dietary laws required by the Jewish faith. Hammonds alleges that he then switched his religious status with the Department of Corrections to that of Orthodox Judaism, and he requested a kosher diet. Prison officials, however, expressed doubts about the sincerity of Hammonds's religious beliefs. Hammonds alleges that, in early April of 2013, the Religious Accommodation Committee, without a legitimate penological reason, denied his request for a kosher diet purportedly because he had failed to demonstrate a sincerely held religious belief. Hammonds, who is confined in the Restricted Housing Unit, asserts that it is difficult for him to show the sincerity of his religious beliefs because, unlike general population inmates, he is prohibited from attending daily, weekly, or monthly religious services. Hammonds asserts, however, that to show the sincerity of his religious beliefs from now on he will eat only kosher meals.

Since his conversion, Hammonds has stopped eating nonkosher meals, and beginning on May 1, 2013, Hammonds began eating only fresh fruit, bread, and cold cereal, and drinking milk. After defendant Buzas, on May 23, 2013, told Hammonds

that his actions did not count as a hunger strike, Hammonds alleges that he quit eating altogether.[1] According to Hammonds, other prisoners receive kosher meals and approving a kosher diet for him would not burden the defendants, but denial of the diet burdens him and causes him irreparable harm. Defendants Lewis and Buzas have observed Hammonds on his hunger strike. On May 24, 2013, Hammonds told Lewis that he had not eaten in 23 days because he had been denied kosher meals, and Lewis stated that there is nothing he can do. Hammonds alleges that he is being denied a kosher diet because he is black and because the Religious Accommodation Committee falsely believes that he just recently began following the Jewish faith.

Hammonds alleges that, on May 11, 2013, he filed a grievance about the denial of a kosher diet, and he alleges that he "is currently exhausting his available administrative remedies." *Doc. 1* at ¶24. Although recognizing that he has not exhausted available administrative remedies, Hammonds seeks a court order directing that he be placed on a kosher diet until the grievance process is completed. He contends that without court intervention he will suffer irreparable harm because the defendants wish to force feed him.

Hammonds claims that by denying him a kosher diet the defendants are violating his rights. He presents a First Amendment free exercise claim, a Fourteenth

---

[1] In his application for leave to proceed *in forma pauperis* filed on June 11, 2013, Hammonds states that he eats only fresh fruit and milk once a day.

Amendment equal protection claim, and a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq*. He seeks declaratory and injunctive relief as well as punitive damages.

Along with his complaint, on May 31, 2013, Hammonds filed a motion for a temporary restraining order or a preliminary injunction and a brief in support of that motion in which he seeks an order requiring the defendants to provide him with a kosher diet. Hammonds also file a motion for leave to proceed *in forma pauperis*. He did not, however, submit the proper *in forma pauperis* forms, and so the Clerk issued an administrative order directing him either to pay the filing fee or to file the proper *in forma pauperis* forms. On June 11, 2013, Hammonds filed the proper *in forma pauperis* forms, and we now recommend that the complaint be dismissed because Hammonds has not exhausted available administrative remedies.

**III. Discussion.**

A prisoner is required to exhaust available administrative remedies prior to filing an action challenging prison conditions in court. 42 U.S.C. § 1997e(a), provides:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any
> other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such

> administrative remedies as are available are exhausted.

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000).

Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). As an affirmative defense, the failure to exhaust available administrative remedies generally must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). Because failure to exhaust available administrative remedies is an affirmative defense, it is generally not proper for the court to sua sponte dismiss a case on the basis of the plaintiff's failure to exhaust. *Ray v. Kertes,* 285 F.3d 287, 296 (3d Cir. 2002)(holding that because the screening provisions of 42 U.S.C. § 1997e set forth four basis for sua sponte dismissal of a prisoner case, not including failure to exhaust administrative remedies, the court should not generally dismiss a case sua sponte for failure to

exhaust, but noting that a district court has the inherent power to sua sponte dismiss a complaint that on its face violates a bar to suit). "[A]lthough a District Court should generally not raise sua sponte the affirmative defense of failure to exhaust, it may do so if the defense is apparent from the face of the complaint." *Rowann v. Coleman*, 481 F.App'x 44,46 n.3 (3d Cir. 2012)(citations omitted).

The Pennsylvania Department of Corrections (DOC) has regulations regarding religious activities. *See DOC Administrative Directive 819* (available on the DOC's website: www.cor.state.pa.us). In addition, the DOC has implemented an official Inmate Grievance System. The grievance system is governed by Administrative Directive 804 (DC-ADM 804). DC-ADM 804 sets forth a three-tier administrative remedy system. Pursuant to DC-ADM 804, an inmate is required to present his grievance to the Facility Grievance Coordinator for initial review within fifteen days after the events upon which the grievance is based. An inmate may include a request for compensation or other legal relief normally available from a court. The inmate is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. From there the inmate must appeal to the Secretary's Office of Inmate Grievances and Appeals.

In this case, it is apparent from the face of the complaint that Hammonds has not exhausted available administrative remedies. In fact, Hammonds says as much

when he alleges that he "is currently exhausting his available administrative remedies." *Doc. 1* at ¶24. Since Hammonds has not exhausted available administrative remedies, we will recommend that the complaint be dismissed without prejudice to Hammonds filing a new action after he exhausts available administrative remedies.[2]

We also recommend that Hammonds's motion for temporary restraining order or a preliminary injunction be denied. A motion which seeks extraordinary or emergency relief in the form of a temporary restraining order or preliminary injunction is governed by Rule 65 of the Federal Rules of Civil Procedure and is judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Gerardi v. Pelullo,* 16 F.3d 1363,

---

2 Although we recommend dismissal without prejudice to Hammonds filing a new action after he exhausts available administrative remedies, because "the exhaustion of all available administrative remedies is a precondition to filing suit," *Sharpe v. Medina*, 450 F. App'x 109, 112 (3d Cir. 2011), Hammonds may not merely amend this action after exhausting administrative remedies.

7

1373 (3d Cir. 1994)(quoting *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir. 1985)). Because Hammonds has not exhausted available administrative remedies, he does not have a reasonable probability of success on the merits in this case. Accordingly, we recommend that his motion for a temporary restraining order or a preliminary injunction be denied.[3]

**IV. Recommendations.**

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that Hammonds's application to proceed *in forma pauperis* be granted, that his motion for a temporary restraining order or a preliminary injunction be denied, and that the complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

---

3  In his brief in support of his motion for a temporary restraining order or preliminary injunction, Hammonds asserts that because of the emergency nature of the relief that he is seeking, the court should grant his motion even though he "is in the middle of exhausting" administrative remedies. *Doc. 4* at 3. He cites *Jackson v. Dist. of Columbia*, 254 F.3d 262, 268 (D.C. Cir. 2001), a case in which the court refused to adopt an irreparable-injury exception to the PLRA's exhaustion requirement and remanded the case to the district court with instructions to dismiss the case because the plaintiffs had not exhausted administrative remedies prior to filing the case. In the course of its holding, however, the *Jackson* court stated in dicta that a court has the inherent power to protect a prisoner while he exhausts administrative remedies by preserving the status quo. *Id.* Here, Hammonds is not seeking to preserve the status quo, which in this case is the denial of a kosher diet. Rather, he is seeking the opposite—to upset the status quo. Thus, this case is distinguishable from the situations mentioned in *Jackson*.

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of June, 2013.

**S/*Susan E. Schwab*** 
Susan E. Schwab 
United States Magistrate Judge